All right, next up we have Thelen v. Somatics, LLC, and we'll give the courtroom a moment to clear. All right, we'll hear first from Ms. Alarcon. Good morning, Your Honors, and may it please the court. Monique Alarcon for the Plaintiff Appellant Jeffrey Thelen. I'd like to focus on three overarching errors the district court committed, each of which warrant reversal on independent grounds. First, at the summary judgment stage, the district court committed grave error in dismissing Mr. Thelen's strict liability design defect claim when Somatics, as the moving party, failed to meet its burden of production under Rule 56. Second, in instructing the jury, the district court erroneously dismissed Mr. Thelen's negligence claim to simplify the case and erroneously instructed the jury that the learned intermediary doctrine applied to the issue of causation and not just duty on his strict liability failure to warrant claim. And third, the district court erred and abused its discretion in excluding the causation opinion of Mr. Thelen's treating provider. To my first point, there is no question that under Nebraska Supreme Court precedent, the ordinary consumer for purposes of a design defect claim is the patient. That is what the Nebraska Supreme Court held in Freeman. In its summary judgment motion, however, Somatics never presented any evidence demonstrating absence of a genuine dispute of fact as to the expectations of an ordinary consumer. So I thought that we had said that it's sufficient for the moving party simply to point out that you haven't put forth any evidence. Your Honor, under Celotex and Clark, this court's decision in Clark interpreting Celotex, this court has held that that is not enough. You still have to point. You still have to demonstrate as the moving party to the district court that there is an absence of evidence. So just tell me what I've got wrong. I'm reading off my notes. I'm quoting a case called Willis versus Royal Caribbean Cruises. It's a it's a 2023 published 11th Circuit case and quoting Celotex. It says instead, the moving party may simply point out to the district court that there is an absence of evidence to support the non moving parties case. And then what I read and I get it, it wasn't much, but they said plaintiff has not developed evidence regarding user expectations. Your Honor, Willis still refers to the court's decision in Clark. And even under Willis and the other case, Rice versus City of Fort Lauderdale, both cases still acknowledge that a moving party must point to materials in the record demonstrating the absence of a genuine dispute of fact. Whether it's the pleadings, admissions, interrogatories, semantics didn't do that. Simply saying, well, they didn't meet their burden and moving on to raise other arguments regarding the subjective expectations of the plaintiff wasn't sufficient. It didn't have a separate statement of facts showing the court. This is the evidence on file or the lack of evidence on file, and therefore, you know, plaintiff cannot move forward with this claim. It didn't do that. So the court was deprived of the opportunity to actually look at the record and determine whether semantics as the moving party met its burden of production in showing there was an absence of dispute of fact. And, and for that reason, plaintiff was left to only respond to what the subjective expectations of the patient was, which is the arguments that semantics advanced in its moving papers. Your point is that you can't the defendant here, the moving party can't simply assert that you haven't shown any evidence. They've got to kind of show it. That's exactly right. And by pointing to whether the the pleadings or some other form of evidence in the record, and there was none of that here. The only evidence that semantics pointed to were the subjective expectations of the plaintiff's ECT treating doctor. And in response to that, T. Lynn submitted a slew of evidence concerning what the doctor's expectations were, what T. Lynn's expectations were, and so on. But more than that, Your Honor, even if semantics had somehow met its burden of proof, which is clear from the record, it did not, excuse me, its burden of production, which is clear from the record, it did not. Plaintiff, in response to the entire summary judgment motion, submitted extensive evidence concerning that that are relevant to the expectations of an ordinary consumer. Along with that included the ECT instruction manual, the labeling for purposes of this case, which didn't include any warnings concerning the risk of brain damage. The patient information materials that were provided. Help me with something that I sort of perplexed about as I read this. Is there a difference between saying that there is a real risk, a palpable risk of long term memory loss and saying brain damage. Could there be the one without the other. Could you have such a sufficient cognitive impairment that you've lost long term memory and not at the same time have sustained brain damage. Your Honor, on the facts of this case, that distinction was critical and that is something that was presented through extensive evidence to the jury. The evidence that the warnings that were relayed to Mr. Teel and by his doctor was permanent memory loss surrounding the time of the treatment. Right. You don't remember what you're going to, you may not remember the drive home, what you had for dinner the night before things happening around the time of your treatment, but not brain damage, not the form of permanent injury of a brain injury where you are not recalling your childhood in its entirety. You don't recall. But the warnings spoke to the risk of permanent long term memory loss. To be clear, I'm simply asking, can one sustain permanent long term memory loss at the same time and not have sustained brain damage. I'm asking whether you have that. Yeah, whether it was enough to say long term memory loss based on the record that we have here. It was not enough. And I just want to clarify the warnings from the menu, there were no warnings from the manufacturer. So that was those warnings were not given to the doctor with the doctor and with the consent form explained to the patient was well there might be some permanent loss of memory. The question then is, well, what did that mean. Is it. Is it short term, or is it long term, are we talking about your entire autobiographical memory, or just around the time of treatment and that's where the distinction lied. And certainly these doctors test this doctor testified that as to the risk of brain damage, he was not aware of that risk somatics did not warn him of that and had he been aware of that he would have relayed those warnings to Mr. And that distinction was critical, because what we do have evidence of in the case was that he suffered a neurocognitive disorder which is in fact brain damage. That's different from not remembering information around the time of your treatment and maybe number never remembering that. That's a critical distinction. That was that issue here. And your honor's that brings me to my second point in instructing the jury, the court erroneously took away an entirely distinct theory of liability from Mr T Lynn, and sent the claim sent the issues to the presented only the strict liability failure to warn claim to the jury. Under Freeman and under Nebraska Supreme Court precedent negligence and strict liability are entirely distinct claims, the court had no authority by which he could merge the negligence and the strict liability claim. Mr T Lynn's negligence claim was far broader than just a failure to warn it included failure to test failure to investigate, and all of those theories of liability were claims that survived summary judgment, what do you make of the colloquy that they have in their brief in the district court where it sounds like I don't know if you or one of your colleagues says that it implies that the failure to test theory is just part and parcel of the failure to warn. Some courts have interpreted it that well I know I mean I'm not talking about courts, you or someone on your team said, because they failed to inform themselves of the risk which I which I take to mean failed to test the product, quote, they did not provide adequate warnings. It just sounds like you said it's way broader than failure to warn it's fair to test and fair to investigate, but it sounds like somebody on your side told the district court that those failures are sort of part and parcel of the failure to warn. In this case, maybe in other cases, failure to test and investigate might be indicative of negligence sort of more more generally or more broadly, but it sounds like here, you sort of honed in on those as relevant to a failure to warn. I will say honor in the jury instructions that were proposed by either side, the plaintiff specifically objected to somatics during instruction that solely focused on failure to warrant as the basis for the negligence claim and plaintiff throughout the lower court proceedings maintain that that was far broader and our objection is laid out in response to somatics proposed jury instruction I'll find a citation provide that on rebuttal. And so that was always our position, sure, it can inform a failure to warn, but that isn't the only route to proving negligence of failure to test demonstrates that a manufacturer should not put out a product, right, if a, if a manufacturer is entitled to move forward on his claim that survive summary judgment and present that claim to the jury instead he was limited to the failure to warn, and that was severely prejudicial, because we know that the failure to warn instruction carried the learned to learn a broader negligence claim for failure to test, then that learned intermediary instruction would not have applied to the causation instruction. As to the learned intermediary issue. The court erroneously under Nebraska law applied this issue of learned intermediary to causation, when the courts in Nebraska have strictly interpreted that to apply exclusively to the issue of duty. In instructing the jury that Mr. Teal and was required to prove that the learned intermediary excuse me that the doctor would not have altered his conduct absent or would have altered his conduct with some warning that was erroneous under Nebraska law which specifically, like other jurisdictions such as Colorado, Connecticut, Arizona, have held that that is limited, or have applied that only to the issue of duty. All right, thank you. And you've reserved four minutes for rebuttal. Yes, your honor. Thank you. We'll hear next from Mr Freiman. Good morning, your honors may please the court I am Jonathan Freiman on behalf of semantics, and I heard, I believe, three different points being made by opposing counsel so I'll begin by addressing those of course I'm happy to answer any questions you have. First of all, this question as to whether the learned intermediary doctrine applies to causation and not just duty. I begin by directing your attention to this court's own tutwiler decision that's regarding Alabama law not Nebraska law, but the law is the same across the United States in this California Supreme Court and the Hines decision has recently come out with an explanation of it, and the rationale is simple so let's just talk about the principles here. The learned intermediary doctrine goes to the duty to warn, and when you're in the context of complicated products pharmaceutical devices or drugs, the duty to warn runs from the manufacturer of those products to the individual who is going to be prescribing those products it doesn't go directly to the consumer. Then the question is, as with any tort, you don't just have a duty but obviously you need to prove causation. So how do you prove causation in this context, well you need to prove that if there was an inadequate warning in some way so that the duty was breached. Did it cause the harm. Well, the only way can cause the harm is if in fact, it led the prescribing individual to do something different. It led that prescribing individual to prescribe the drug, or to change their conduct in some other way that led to the individual being harmed so again tutwiler Hines decisions across the country they cite decisions that are not on point or in fact have been superseded by other decisions and the fact that they ultimately turn to Canadian law on this topic is a good indication of the state of the law nationwide. I'm going to go to the burden question judge Newsome you asked about that. I think, I mean this is pretty straightforward black letter law and summary judgment this is not some unique context here began with the sell a text decision in the US Supreme Court, if the plaintiff has the burden, and they haven't put forward evidence on one of the elements of the cause of action that they're pressing on, and the defendant says look, there's no evidence on that. The case doesn't go to a jury, the case doesn't go to a jury when there's no evidence by which a jury can find for the plaintiff. That's what we did here. It's the consumer expectations test for product claims in Nebraska, we said there is no evidence of consumer expectations in the record, Nebraska is clear that it's it's what a what a reasonable person it's an objective standard, what a reasonable person would expect in the context I can, why can't a jury composed of ordinary individuals determined for itself. What a reasonable person would expect two points in response to that judge Rosenbaum the first is we need to define who is the consumer so this is a consumer expectations test, and the Freeman decision speaks about the purchaser. With regard to the phymatron device, the consumer and the purchaser is certainly not the patient phymatron device is sold to hospitals where it is administered used by doctors, patients can't buy it's not like accutane in the Freeman case. It's not a drug that you go to CVS and you buy with your own money, and then you administer to yourself by popping the pill in your mouth. This is a big machine in the hospital that only doctors can use. So everything goes to the doctor in the hospital, they're the consumer, they're the purchaser. So that's the first cut question when we when we think about the learned intermediary doctrine. If the, if there should have been some kind of information that the doctor had with respect to brain damage or whatever the issue may have been. And the doctor had passed it along to the plaintiff here plaintiff says, I wouldn't have had this done. I mean, why isn't that something that wasn't that something that an ordinary jury can evaluate. Well, first of all, the question as to what the consumer expectations are so let me sort of interpret part of what your honor said if I'm wrong please correct me but I think you're saying well what if the consumer is in fact the patient, and it's about their ordinary expectations it's not about the doctors we disagree with that but taking that premise. What about that. Well, here, this is a situation where it's just Marcus pointed out earlier, there is a warning of permanent memory loss there's a warning of death. These are in the consent forms that are signed over 90 times by Mr. Teel and in this case. Okay, so, and yes there are warnings that are given to the hospital doctors is there a difference between warning of permanent memory loss and warning of brain damage. It's plaintiff's contention that there is such a difference. Is that a fact in dispute. Whether there's a difference it was a fact in dispute yes and the, the treating doctor, the administering doctor of ECT Dr Sharma testified at trial that in fact the things that Mr Teel and claims cannot be caused by ECT are not caused by ECT. It was testimony that Mr Teel and had no memory loss that Mr Teel and had no subpar cognitive functioning these were issues in dispute, the jury easily could have found that there was no injury. Number one, they also could have found that if there was some injury to memory, it wasn't caused by the ECT it was caused by the repeated hospitalizations for for alcohol abuse, the repeated drug use other injuries etc so they could have found multiple reasons why they found no causation. In any event, I'm getting back to this question of consumer expectations, what a consumer expects in this context. This is not a simple context right this is not a context about what do you expect your lawnmower is going to have as a safety device when you buy it and you mow your lawn maybe you can ask ordinary jurors that question here the question is, when someone who is receiving ECT treatment is warned about permanent memory loss and is warned about the possibility of death would an ordinary consumer also expect to be warned judge Marcus going to your question of brain damage. That's something that going back to the Romney decision in a different context by the Nebraska Supreme Court expert testimony is required here. This isn't something where people know and I'll tell you one extra reason why you need testimony because how do you get to the position of Mr Teel and where you're getting ECT treatment. You don't just walk in off the street and go to the hardware store and buy a lawnmower, you get to the position of having ECT treatment. After you've had a conversation with the doctor, and this is not because of the learned intermediary doctor. This is just because of how we regulate on both the state and federal laws, access to prescription products devices and drugs, you can't get them on your own, you can't make that choice on your own. So the only way that you get to the product is you've had in the case of ECT extensive conversations with the doctor. So how can a set of ordinary jurors who's never had extensive conversations with a doctor about ECT treatment, let alone received warnings of permanent memory loss and death. How can they put themselves in the position of what are the ordinary consumer expectations of that. That's that that doesn't make any sense. It does seem like there are some things, let's say it didn't say anything at all about memory loss. Are you suggesting that an ordinary person, and that it, and let's say that it does cause memory loss this is a hypothetical guy. Are you suggesting that an ordinary person couldn't determine that that was a problem, you know, a problematic warning that it didn't have any indication at all about memory loss or brain damage. But in an ordinary person know that that seemed like it was something that should be in there if that's a problem. Well your honor taking it in the complete cleanse diversion here where the only thing is you're getting a product and you weren't warned about memory loss is ordinary to expect to be warned of memory loss, maybe but that's not the context we're in, we're in a context where we have a complicated medical procedure that is explained by doctors with warnings. And in that context, that's the thing that the jury actually hear what you're saying, all I'm saying is, all I'm suggesting is that they're, you know, that it's not, it doesn't seem like it's necessarily the case that an ordinary jury wouldn't be able to determine whether there was a problem here. I mean, you know, maybe the ordinary jury determined that there wasn't. That could be the answer, but it seems like an ordinary jury should be able to determine that there. There wasn't. Well, your honor I'd return to Nebraska law which is what this court is supplying under area here and going back to Nebraska Supreme Court decision in Romney. In that case, that's the case with a monster device that is used in junkyards to sheath entire car bodies there's a guillotine that comes down cuts them into pieces. And the question there is, was there a reasonable expectation of a certain kind of safety there when you're working on that machine by the individuals, and the Nebraska Supreme Court found it significant and determinative that there in fact was testimony saying that the people who worked in that scrapyard, the employees, not just Mr Romney, the employees who worked in that scrapyard had a reasonable expectation that there would be a certain kind of locking mechanism on the arm of that guillotine. So if they climbed in there to clear out the scrap, the guillotine wasn't going to come down on them if they leaned on that thing, the guillotine wasn't going to come down and they had a reasonable expectation of safety. That was a question for experts that's a far less complicated circumstance than we are so whatever the court's intuitions may be. The question is the application of Nebraska law here I think Nebraska law it's required. Let me ask you another question about Nebraska law if I could because I understand you to be saying that there's not a negligent testing claim available under Nebraska law so let me first ask you if I'm misunderstanding your position on that. First of all, I think your honor, certainly there is a statute which says negligent testing is available as a statutory cause of action, and there was, there's not a statutory cause of action here there's common law cause of action. But in any event, we have two issues that come out of that immediately. One is still, how do you approve causation. What did the here they say well there weren't clinical trials, this is the kind of device that under the FDA doesn't require clinical trials for you know, older devices that are understood to be safe they don't require them is like aspirin. But in any event, you have a situation where there wasn't clinical testing done they say well because there wasn't clinical testing done, you didn't learn about this side effect, which, you know, there's testimony the side effect doesn't occur but nevermind. You didn't learn about this side effect, and because you didn't learn about the side effect, you didn't warn Mr T Lynn you didn't want the doctor who didn't warn Mr G when there's a lot of steps in this right testing is just the beginning of this long set of you didn't. So are you denying back to my my colloquy with your opponent. Are you denying that Nebraska law might, in some other case, recognize a failure to test as simply a failure to, you know, sort of use do care, and thus informative of a negligence claim, and you're just saying that didn't happen here like that's not the theory here or are you saying never is failure to test indicative of a failure to exercise to care, two things to do some first of all, we're saying that that's not the theory here. The theory here is that it was a part of duty to work, and that colloquy that you discussed with opposing counsel yes they're on record as saying, this is just how we prove failure to warn, it's part of that. So that's number one, not in this case. Number two is, in any case, they still need to prove causation. And so, where's the causation here, where's the evidence of causation. The only possible evidence of causation is the one that runs through their theory which they didn't establish under Willis and sell a tax. Let me address the merger doctrine, which was briefly mentioned by opposing counsel and opposing counsel incorrectly said that Freeman does not recognize that as possible. Freeman's really clear that the purpose is to get to the nub of things not the title of causes of action, and I'll just read to you a section from pages 573 to 74 short one don't worry from Freeman, which says to or more factually identical failure to warn flexibility, submitting claims separately would generate confusion and may well result in inconsistent verdicts. That's a call that the Nebraska Supreme Court has made, they said this is okay. If what you're claiming is failure to warrant just have one failure to warrant claim. And here, there were discussions about the fact that strict liability is easier to satisfy the negligence that went forward with strict liability. There's no problem with the district court's decision under binding Nebraska Supreme Court law. Am I right though that three minutes self dealt with a merger of a strict liability claim tort claim, and a implied warranty of merchantability, sort of effectively a breach of contract claim right so it wasn't a negligent strict liability so it's a little off point right they mentioned negligence in the passage that you've read but that wasn't what Freeman itself was about. Correct as to what the court did. And I'm correct as to what the court said. So the court bothered to take the extra step and to say, hey, we don't just meet the implied warranty of merchantability we mean strict liability and negligence so this court and making an eerie guess is what Nebraska would do I think your guesses, they would do what they said. Opposing Council very briefly mentioned a topic that you didn't get to given the clock I imagine she might in rebuttal so I will briefly mentioned, Dr. Thank you, Your Honors judge Newsome I did get a citation to the objection that we made to semantics instruction on the negligence claim limiting it to failure to warn that was ECF 177 at 60. Throughout the lower court proceedings we objected to the lower court dismissing or limiting plaintiffs negligence claim to simply a failure to warn, as we've stated, under Nebraska law negligence is much broader. So what about your adversaries point that even if that's true, you're still going to have to prove causation and in a case like this. That is sort of like necessarily going to run through the warning. What would the causal theory be of the in the air negligence claim or the more general negligence claim that I was positing what would the causation theory for that be. We have evidence in this case that the manufacturer did no testing, no testing whatsoever and therefore, and therefore, that I buy it simply. We're focusing on the manufacturers conduct. So by, but you've still got to show that that kind of cause an injury and I'm wondering how you make that by putting their product on the market without testing it. That was the cause of the plaintiff harm plaintiff's harm. It's so different your honor from, I make a car I manufacture a car I choose not to test it, I put it on the market, and somebody who drives that car is in an accident and is injured. It's my negligence and failing to doesn't necessarily mean that the reason that the person was in the accident was because of a failure to test the car. Right? I mean, the person may have been looking at text messages and that would have nothing to do with the failure to test the car. Sure. And then that's a causation inquiry that is developed in the record. Right? And that's similar to what was developed here. But the point is, don't you have to show that there's something about the failure to test that caused the problem that is that there's something that wasn't disclosed as a result of the failure to test or that wasn't known as a result of the failure to test that's now known that resulted in your clients problem. Or it's just that the product was unsafe to begin with, and it was unsafe, and they stuck their head in the sand and still put it on the market anyway. It sounds like what you're arguing is that you can have a failure to test claim just just the pure fact that you didn't test is good enough for a failure to test claim regardless of whether it resulted in or caused any kind of or could be linked to any kind of injury that the plaintiff sustains. The pure fact that there was a failure to test shows a breach of their duty shows negligence causation is then proven through all of the evidence that was presented in this case, medical expert testimony showing that the injuries were tied to that, and so on and so that causation is still going to be proven it doesn't hinge on a warning or the lack of a warning the way that a failure to warn claim does. And under Nebraska law there's a specific statute Nebraska statute section 25 dash 21 182 that specifically says plaintiff can bring a product liability action based on failure to test a negligent or defective testing, and so that, and that was also recognized under Freeman Freeman specifically sites to. I agree that that it's pretty clear under Nebraska law that a plaintiff can bring a failure to test that but that's a different to me that's a different question right The question is, then, you know, have you established enough evidence for all of the elements. Well, I'll just take that back up for a second, Your Honor, that alone by denying Mr Teal and the ability to present that claim to the jury was prejudicial error and jury instructions are presumptively prejudicial, where the court cannot determine, you know, had a different instruction been given with the outcome have been different. And that is clear here that had the, the, the learned intermediary doctrine would not have come into play on a failure to test and so now the jury simply looks at, you know, was there negligence and is there evidence presented before us showing that the manufacturers negligence by putting this product onto the market, when it didn't know if it was safe or not, was that the cause of the plaintiff's injury and certainly there was medical expert testimony, showing and demonstrating all of that and so by denying Mr Teal and the ability to present that claim to the jury. That was prejudicial we won't know so the the alternative causation arguments that semantics has raised today and in its briefing are speculative, because what we know is that that theory of liability was never assessed by the jury, although there were facts in the record from which they could have made that finding. All right, thank you counsel. Thank you. We appreciate the arguments. Thank you.